All right, we're ready to hear our final case. United States v. Askew. Mr. Wagner, we'd be happy to hear from you, sir. Thank you, Your Honor. Good morning, and may it please the Court. My name is Robert Wagner, and I represent Mr. Askew in this case. Your Honors, it is Mr. Askew's position that he was denied a fair trial in a number of very important respects. First, when the court sua sponte, district court I should say, sua sponte improperly and unlawfully instructed the jury of the validity of the search warrant in the search in this case. Second, the court's erroneous instructions under 18 U.S.C. 924C, Firearm and Furtherance of a Drug Trafficking Charge, to include the failure to provide a mere presence instruction in presenting an erroneous standard leading to an inference of guilt. Third, insufficiency of the evidence, specifically count 10 of the superseding indictment, and also the Doyle error in this case. I thought that you had said that you had no objection, or previous counsel said had no objection to the instructions. Judge, that's an interesting point. So, first, it's important to note that counsel submitted jury instructions, Joint Appendix 221 and 223, reflect that there were proposed jury instructions for mere presence. It appeared that the district court ignored this request, didn't consider it in the charge to the jury. There were two separate instructions that were at issue at this point, Judge. There was an instruction dealing with the inference of guilt that the district court essentially... I thought you said you had no objection to the instructions that you knew were going to be submitted to the jury. Judge, again, it wasn't me. I know it wasn't you, and we often have this situation where appellate counsel is loaded down with problems that they had absolutely no hand in creating. But assuming that that's where we are, I thought that the statement was that there was no objection. Well, I think it's unclear what trial counsel was referring to when trial counsel said no objection. Because, as I said, there were two separate instructions. And what the district court did... No, you're objecting to the one that the court amended at the request of defense counsel. Right. And then he said, the court asked, is that all right? He said, no objection, Your Honor. And he gave that. That's correct. And that went, to a certain extent, to the inference that the jury may infer from the evidence, the guilt of the defendant. I referenced this in my reply, Judge. If the trial court counsel didn't properly object to unlawful instructions, well, I think on the record that this court can consider the ineffectiveness of counsel. If the court finds that those instructions were deficient, were improper... No, we're talking about one instruction that you objected to that was changed. And so we ought to stick with that one. And with respect to that one, the counsel was satisfied that making it a permissive type of arrangement was okay with him. And it's hard to conclude that that is ineffective assistance of counsel, at least in the context of the case itself. I mean, you want to raise it and think it was material on a 2255 or something, but I don't see how you get around the court feature or the waiver argument myself. Because basically, he was specifically asked, the court was willing to change the instruction. Court did change the instruction, asked him if that's okay. If he continued to object, who knows, court may have still changed it. And that's why objections are important, to allow the court to rectify situations in the context of when they're relevant. In this case, everybody seemed to be happy. Don't you think? That is a good point, Judge. But my point is that it was not clear exactly what counsel was objecting to. And it would appear from the record that the trial court corrected the instruction that the trial counsel was not referring to. The trial counsel was talking about an argument that was fine with him. He said, okay, I'll try to fix that. And I wish I were trial counsel at that time and I was able to say that that instruction that said, the common sense recognition that drug dealing is a dangerous and violent enterprise should never have gone to the jury. That's just a misstatement of the law. The question here is when someone says that they have no objection. The question is, does that put in motion plain error review or is that an absolute waiver? And Hale seems to suggest that it's more than plain error, that it's a waiver. But the other question is with respect to your point on ineffective assistance of counsel. I think we are too prone to decide on collateral review that the fact that on direct review there was plain error review, that doesn't necessarily mean we can translate plain error going on. But, you know, let's say that there was an objection. You're still concerned about the instructions being mandatory rather than permissive in terms of what the jury could. And in terms of whether there was a mandatory directive to the jury. So my answer to that judge would be that, yes, the judge, when she inserted the term may into the instruction, took it from a mandatory presumption into a permissive inference. So what's wrong with that? Because that's what permissive inferences are very different from mandatory direction. No question, Judge. I can't argue with that. But the premise of the inference was the erroneous statement, the unlawful statement, that drug dealing is necessarily dangerous and violent. It's a dangerous and violent enterprise. And that includes count ten of the superseding indictment in this case. I don't understand that. We've been told time and time again to look at the instructions as a whole. And Judge Smith says the reasonable inferences, she put the case in the lap of the jury. And she says reasonable inferences is justified in light of your experience and common sense. And then she lists a number of factors. And she says this is entirely for you to decide. So when you look at the instructions as a whole, I don't see how this, and to look at the factors that the jury may consider, it seems to me that the judge left the case squarely with the jury to apply its own experience to and to weigh the factors as it sees fit. I understand that position, Judge. But I've been practicing in the Eastern District of Virginia for over thirty years. I've tried many 924C cases, Judge. I've had many arguments about instructions, even in this court. I have never seen in any other circuit in the country an instruction such as this. An instruction which does not allow for the mere presence argument to be made or mere presence instruction to be given. But more importantly, that it provides the jury with this inference. And let's suggest for argument it is a permissive inference. It's an anomaly amongst the... The question is, I think, taking the instructions as a whole, did it come close to directing a verdict or to mandatorily insisting on something? And I don't... I think she repeatedly left the case in the lap of the jury. And, you know, in addition, the lawyer has said we have no objection to what was done. I wish I could correct that, Judge. I wish I could. I wish I had been at trial to be able to object to that instruction because I certainly wouldn't, Judge. Well, I mean, let's show some understanding of trial counsel that the word at his suggestion was changed from must or may. So I think he was thinking, well, it's permissive. One of the things further concerned, I mean, further, I think, complicates your position is the evidence on the inference point. And you raise a sufficiency question, but there seemed to be quite a bit of evidence here. I don't know that anything such as the Doyle question that you raised or what have you can overcome. This is a strong case because you have these defendants recorded conversations with Doggy Dog, who is a drug dealer, about firearms. And they're just multiple conversations in which Mr. Askew is talking with drug dealers, convicted drug dealers, and seeking to obtain firearms from them. And then there are these recovered firearms whose descriptions match the things that Askew was trying to obtain from illegitimate sources. And so when you step back and you can pick at these minor Doyle issues or may, must, but it's a strong case. I must take issue with that, Judge, especially with respect to Count 10. Count 10 involved a firearm buried in a safe that was locked. It needed to be pried open by law enforcement in the corner of a locked storage locker. Big storage locker. Storage locker had a big cover on it. You had to open up the cover. It was in a storage locker facility that had a lock gate with a code on it. I can't comprehend how that gun could have been possessed in furtherance of a drug trafficking crime, especially when the drug was in it. Let me suggest this. Instead of finding a gun in that safe, they found scales next to the drugs. And that's all that was in the safe. Could it be argued that the scales helped in furtherance of the drug trafficking? That's very different, Judge. I didn't ask you that. I asked you could that inference be drawn. Yes. Yes, absolutely. But I would like to explain my answer. Then the argument comes when he's negotiating for guns and has guns in his bedroom and he has guns in the closet and he stores a gun with the drugs in the safe. The only thing in that safe is a bottle of marijuana, I guess, and a gun. And the question is can it be inferred that that's a tool of the distribution just like scales are or baggies or . . . And my reading of the record is, Judge, that that little glass jar in the small safe, that substance was never tested in there. It was presumed to be marijuana. In the red cooler in that same locker was a quantity of marijuana. Everybody assumed that the drugs in the safe were marijuana. Small amount. Yeah, small. But again, it's marijuana, Judge. That doesn't matter. The question is why do you put the gun next to the marijuana in there? What does a person on the street conclude? Can the person on the street suggest that was helpful to the distribution, especially when you have evidence of distribution? Can the person on the street suggest that that was simply being stored there for purposes of being a gun collector? But that's a jury argument. I mean, that's an argument that may be a good argument, but that's exactly why we have juries to evaluate that. This is just a question of the weight the jury wants to put on that little factor as opposed to the other. I don't know how many factors there were. There may be four or five that she said that the district court, that the jury should consider. But you're giving us a jury argument. In light of the erroneous instruction that the jury was given, I think that needs to be taken into consideration. There's another. I see my time is almost running out. The more important issue that I wanted to raise, the first issue that this court identified, had to do with the sua sponte instruction by the district court judge, alerting the jury that there is no issue with the search in this case or the search warrants in this case. And it was done at a time that was so important in this case. The last witness of the day was testifying. The defense attorney, Mr. Sachs, was conducting his cross-examination. I'm not sure that in light of what I think was a lot of very strong evidence in light of the totality of the circumstances, I don't see, I think there's a real question of prejudice. Assuming it was wrong and I'm not willing to assume that, I think she was trying to clear up the question that this was not a legal question but it's a factual question that allows the jury to take up in accordance with his common sense, which is in harmony with the entire way that the district judge approached the case. The district judge approached the case when she enumerated the factors and says, apply your common sense and this and that. She, when the sun sets, she left this case in the hands of the jury. That's the way she approached the case. She didn't try to take it away from them. The implication is something is not legally infirm, then it becomes a jury matter and she wanted to put it in layman's terms. But . . . Let me ask my colleagues, Judge Benjamin, you have any questions. Judge Levi, we don't have any questions but you have time for rebuttal. Thank you Judge. Mrs. Bekar. Good morning and may it please the court. Jacqueline Bechara for the United States. The court should affirm the defendant's convictions because the jury heard overwhelming evidence that the defendant possessed the seven guns found in his home and his storage unit in furtherance of drug trafficking and none of his arguments establishes reversible error. Mrs. Bechara, I do have a question about just the one gun that was found in the storage unit in the safe. He is saying that it wasn't easily accessible to him and in furtherance of because it was not easily accessible to him. I just would like to hear your argument regarding that. Absolutely. So of course that was the jury's inference that it was possessed in furtherance of drug trafficking. That's a factual inference so this court would use that determination only for clear error and that certainly was not a clearly erroneous inference to make when it was not just a gun. It was a loaded gun in the safe and it was also next to cash which the jury could have inferred. I think the question focused on accessibility and I would have thought that your response would be accessibility is not the standard. It's whether it was helpful. It's not the standard. Whether it's helpful, it's carrying, using or in furtherance of and in furtherance of we have said whether it's helpful to the drug thing and the idea is I suppose the argument that you would have to make is that having the tools of the trade is helpful to the trade. Yes. I would agree with that characterization. Judging my accessibility is not required. It is certainly something that the jury can consider but there were a host of other evidentiary bearings of furtherance that were present in the storage unit that supported that inference. I can turn to the instructional issue. Your Honors are correct that the defendant has waived his objections to the 924C instructions. My colleague has submitted that perhaps it is unclear whether trial counsel waived or forfeited the objections but if we look at the context of the trial record it makes clear that he did waive the objections because not only after judgment. Was the objection simply an objection dealing with the no objection language? Was that no objection to the change from a mandatory to a permissive inference or was the objection to the instructions, no objections refer to the instructions as a whole? Your opposing counsel has said this, the no objection only referred to a particular aspect of the instructions. What do you say about that? Well, in context during the instructions conference the court was looking at the 924C instructions. Intending that the no objection meant that the instructions as a whole were fine? Right and if you look just a couple pages later the court again for clarity of the record summarized okay this is what we've covered these are the changes that I'm going to make to the instructions. But the no objection language came sort of closely on the heels of the change that was requested by counsel. So that's true. Would it be permissible for us to say that the no objection language referred only to the recent change from mandatory to permissive? That no objection meant no objection to the change? It looks like it was no objection to the 924C instructions, right? The district court didn't think that there was anything else that she needed to do to properly instruct the jury. And as I was mentioning... So your point is that if there is an objection, an objection needs to be clear as to what the grounds of the objection are under Rule 50 or 51 or whatever. But that's civil procedure. So even if you say no objection, if you do have an objection to another part of the instructions, you have to make that clear and the burden is on the counsel to alert the district judge to the grounds of the objection. Yes, and that would have been the opportunity. So if we say that, then does that move the standard of review away from complete forfeiture to a question of plain error and thinking of whether we review something or whether we regard something as a waiver or forfeiture or whether we undertake plain error. And normally, I mean, a failure to make clear the specific grounds of the objection would suggest plain error review rather than an outright waiver or forfeiture. But that... But on the other hand, you can see how the district judge is uncertain or ambiguity. You can see how the district judge says, well, the lawyer thinks the instructions are okay. And if he didn't think that they were okay, he would have told me. Yes, Your Honor. It's just a question of whether you go the route of waiver or forfeiture or whether you go the route of plain error. I mean, I can't see arguments for doing either. Either way, the standard of review is helpful to you. Sure, and on this record, we believe that this was waiver. But even if the court reviews for plain error, the defendant certainly cannot establish error, let alone plain error in these instructions. Well, I think if we were, and we don't need to now, but if we were to explore the context of the dialogue, the objection was made to the instruction that the government doesn't have a right to that in view of this evidence telling the jury what is the case. And the court then chimes in and says, well, maybe I can fix that. How about if I change the one word to may? And the court and the lawyer says, that's fine, that works. So, really the objection was to the whole instruction at being in a mandatory form directing the jury that that's what they conclude. And we seem satisfied with that. Yes, Your Honor. And I would just reiterate that at the end of the instructions conference when the court summarized what it would be doing going forward, again, defense counsel said, thank you, Your Honor, no objection. And of course, after the court charged the jury, she again conferred with defense counsel, have I instructed the jury in accordance with your wishes? And he said, yes, thank you, Your Honor. Those are reaffirmations of what you're saying of what was in the dialogue earlier. Yes, and it makes clear that this was a knowing and intentional, knowing involuntary waiver. And I just want to respond briefly to my colleague's suggestion, which he raised for the first time in his reply brief that an allegation of ineffective assistance of trial counsel might somehow excuse a waiver on direct appeal. The government disputes that suggestion. I have located no authority of this court or any other court that has recognized that a claim of ineffective assistance would excuse a waiver in this context. I've located only two published court of appeals decisions from other courts that have rejected the suggestion. And that's for good reason, because that kind of exception would swallow ordinary rules of waiver and forfeiture. And moreover, this court's precedent makes clear that it only considers claims of ineffective assistance of counsel on direct appeal when they conclusively appear from the record. Beyond that, it's true that we don't consider the ineffective assistance of counsel claims on direct appeal. But I think in fairness to lawyers that the fact that we review something on plain error doesn't necessarily mean it doesn't, that doesn't translate automatically into an ineffectiveness claim on 2255. That's correct. And that's a, you know, there's a, that I notice an increasing tendency to do that. To say, oh, well, look, the court, the court said that the error wasn't plain. But the very fact that they took it up on plain error review means it was ineffective not to object. And then we go hammering the lawyer. But anyway, it's just, it's just a tendency I've noticed to turn plain error review on the direct appeal into an ineffectiveness claim on collateral review. And I, I think that's unfair to lawyers. Yes, Your Honor. And here, defense counsel did object during the instructions conference. He just waved to the claims that he's raising now. Unless the court has other questions for me, I won't take up any more of your time. We ask that you affirm. Thank you. Oh, yeah. All right. Mr. Wagner, we'll be happy to hear from you and Roberto. Thank you, Judge. I do want to come back to the sua sponte instruction issue, the instruction about the search and the search warrants that the judge imposed. Let me ask you on that. Sure. You might be able to criticize the court for being oversensitive at that point. The court was concerned about a certain fairness concern. And the cross-examination was suggesting that evidence was not in plain view and, therefore, is illegitimately obtained. That was the inference that the court took from the use of the word plain view. And the court then thought, if necessary, in order to not leave the impression that that evidence couldn't be considered, that the warrants, those guns were covered pursuant to a warrant which were properly executed. Of course, the plain view doctrine wouldn't apply then. And I'm trying to, I understand the court's response, and I'm not sure it should have had to say all that. Maybe it could explain plain view was not an issue in the case or something. But how does, take me on the next step. In other words, the court says the search warrants were proper and properly executed. Did that hurt you? So in the context of how this came up, this came up in the afternoon of the, this was a two-day trial. Very short trial. The defense attorney was cross-examining the detective Aranto at that time. He asks about plain view. Judge calls a timeout. Says, okay, wait, let's clear the courtroom. Let's take the jury out of the courtroom. Jury goes back into their deliberation room. And then she goes and she gives the defense attorney a very hard time about this. Why are you raising the plain view doctrine in this case? That's not an issue before the jury. And he said, no, no, I'm not raising the doctrine. I'm just saying that the stuff, that the drugs in the suitcase weren't in plain view. That's all I'm saying. If there were a legal infirmity, it would have been resolved in a suppression hearing. Absolutely, Judge. Absolutely. But there was no legal infirmity resolved in a suppression hearing. I thought that the comment that the district court made was in pari material to what the district court was trying to do with the change in the instruction from March to May and with the overall instruction to leave it with the left or the jury, leave it to the common sense of the jury. Here are the factors the jury must. And so she went at this thing from start to finish to say, this is the jury's call. And the statement about no legal infirmity, again, was to put it back in the hands of the jury and say, this is not a legal matter for us or whatever. It's up to you. And that was her whole, that's where the thrust of it, that's where the trial was headed, to let the jury make the call. And these other little things are there, they're of a piece with that. And I know you don't agree at all, but the evidence here is pretty strong. Yeah, I absolutely disagree with that, Judge, especially as to count 10 and the accessibility of that firearm. But going back to what the judge... Why do you think a gun has to be accessible? Using a gun may require accessibility, or carrying a gun may require accessibility, but in furtherance of does not require accessibility. It doesn't, Judge, but there has to be some explanation. Don't escape the definition of in furtherance of. I see my time is out, Judge. You'll respond to that, sure. In this situation, how could the government, on that date, with those drugs, explain how that gun furthered, advanced, or helped Mr. Askew in the distribution of drugs, the possession with intent? How was he going to protect that marijuana from someone robbing the marijuana with a gun stashed at the bottom of a safe? It's not used in connection with, it's helpful to, and it's one of the tools of the trade. It's helpful to... When you're a drug distributor, I can tell you, I'm not sure I've ever seen a drug distributor not have a gun. But regardless, we have observed many times it's one of the tools of the trade. The scales are, the baggies, the labeled baggies, and the color coding, and spoons, and all these other things that we find are tools of the trade that help in furtherance of the distribution effort. And I think if you understand in furtherance of, to reach to the word helpful to, then I think they're on okay ground, I think. Well, Judge, this man was a lawful possessor of firearms. He had no felony convictions. He wasn't a prohibited person. He had the lawful constitutional right. No, that isn't the charge. The charge was possessing a firearm in connection, in furtherance of drug distribution. Right, and it could just have easily been a gun that he was storing for purposes of protection of his family. Sure, but when it's connected, when it's right there with the marijuana, just the two items stored together, it looks to me like it's being treated as a tool of the trade and not a hunting rifle that's in the basement with the hunting gear and the caps and all the other stuff. Could have been for target practice. Well, true. There are other possibilities, and that's a factual question that the jury will have to resolve. It is. But the last point I want to make, if I could, again getting back to the district court, interjecting into the jury during the trial this instruction that was never raised by the government. She comes back the next morning and she instructs the jury that as a matter of law the search warrants in this case were properly issued by a judge of proper jurisdiction and they were properly executed by law enforcement. There is no legal issue involving the search warrants in this case. And the judge didn't come to this on a clean slate. In the Godwin case, and I cited that in my reply brief, and Judge Niemeyer, you were on that panel. She was strongly criticized by this court for interjecting her views into that case as an impartial person, biasing the jury. And this case, I think, is another example of her. How could she be biased against the jury when she emphasizes this is up to you? Because she interrupted the defense attorney during his cross-examination. Because right after that witness testified, the next morning she comes back and she instructs the jury about this issue or non-issue with the search in the case. Thank you very much, counsel. Thank you very much. And I see that you're court-appointed and I want to express the thanks of the court for the very able job that you did. Thank you so much. We depend on you. And you've been very helpful. And thank you as well, Ms. Bekarov. I'd like to thank both sides because we benefit from both sides. And we will adjourn court sine die. This honorable court stands adjourned sine die. God save the United States and this honorable court. Thank you.
judges: J. Harvie Wilkinson III, Paul V. Niemeyer, DeAndrea Gist Benjamin